E-FILED
Monday, 05 April, 2021  01:34:38 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-cr-30002** |
| | ) | |
| **EDDIE F. LAWRENCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Eddie F. Lawrence's pro se (d/e 32) and amended motion for compassionate release (d/e 34) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  For the reasons set forth below, the motions are DENIED.

## I. BACKGROUND

On May 5, 2016, Defendant pled guilty to Count 5 of the Indictment.  See Minute Entry dated May 5, 2016.  Count 5 charged Defendant with possessing with intent to distribute more than 28 grams of mixtures or substances containing a detectable amount of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B)(iii).  See Indictment, d/e 1.  On September 6, 2016,

Defendant was sentenced to 120 months' imprisonment and 8 years

of supervised release.  See Judgment, d/e 27.

Defendant is currently incarcerated at USP Marion and has a

projected release date of June 25, 2024.  As of March 31, 2021, the

Bureau of Prisons (BOP) reports that USP Marion currently has one

inmate and six staff members with active cases of COVID-19.  See

COVID-19 Cases, Federal Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last accessed March 31, 2021).

On February 26, 2021, Defendant filed a pro se motion for

compassionate release (d/e 32) pursuant to 18 U.S.C. §

3582(c)(1)(A).  On March 4, 2021, following the appointment of

defense counsel to represent Defendant, an amended motion for

compassionate release (d/e 34) was filed.  Defendant seeks

compassionate release based on his health conditions and the

COVID-19 pandemic as well as the recent decision in United States

v. Ruth, 966 F.3d 642 (7th Cir. 2020) (ruling that the defendant's

2006 Illinois conviction of possession with intent to deliver cocaine

"pursuant to 720 ILCS 570/401(c)(2) is not a predicate 'felony drug

offense' that triggers 21 U.S.C. § 841(b)(1)(C)'s sentencing

enhancement.").

On March 8, 2021, the Government filed a response objecting to Defendant's motion for compassionate release.  <u>See</u> d/e 39.  The Government argues that Defendant is not entitled to compassionate release because Defendant's health and the COVID-19 pandemic do not rise to the level of extraordinary and compelling reasons and a reconsideration of the 18 U.S.C. §3553(a) factors do not warrant a reduction.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  <u>See</u> 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  <u>See</u> First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the

enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion on the inmate's behalf or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Seventh Circuit has held that the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) "is a mandatory, claim-processing rule

and therefore must be enforced when properly invoked." United States v. Sanford, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. 2021).

In this case, Defendant submitted a request to the warden of FCI Greenville on October 21, 2020, which was denied on October 27, 2020.  See Response, d/e 36, p. 33.  The Government does not dispute that Defendant has exhausted his administrative remedies. See Response, d/e 39 ("The transfer from FCI Greenville to USP Marion does not affect the exhaustion requirement.").  The Court finds that Defendant has met the 30-day requirement found in 18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.  The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene, social distancing, and isolation.  Social distancing can be

difficult for individuals living in a prison.

Defendant argues that the presence of the disease at his facility warrants immediate release.  While the Court recognizes that COVID-19 has infected his current facility, USP Marion, the COVID-19 pandemic alone does not constitute "extraordinary and compelling reasons" warranting a reduction in his term of imprisonment.   See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed March 31, 2021).  As of March 31, 2021, the facility currently has one inmate and six staff members with COVID-19.  Id.  The facility has had 780 inmates and 55 staff members recover from the disease.  Id.  USP Marion is not experiencing a serious outbreak of COVID-19 at this time.

Defendant also argues that if he contracts COVID-19, he will be at a higher risk of contracting serious complications or death due to his underlying health conditions.  Defendant is a 34-year-old male arguing that he suffers from hypertension and "has been diagnosed with calcium deposits in his lungs and interventricular delay, a clinical abnormality of the heart that can lead to increased risk of arrhythmic death."  See d/e 34, p. 2.  The medical records

show that Defendant is suffering from hypertension, but his hypertension is being controlled by medication.  <u>See</u> d/e 41. However, Defendant has presented no evidence of calcium deposits in his lungs.  While a 2016 chest radiograph noted a three-millimeter calcified granuloma, a chest radiograph completed in February 2021 does not show such calcified granuloma. Additionally, Defendant's argument that he faces an increased rate of mortality due to a 2016 electrocardiogram ("ECG"), which noted he might have a right ventricular conduction delay, is also unsupported.  The study cited by Defendant in his amended motion (d/e 34) addresses men with a QRS complex[1] duration of more than 110 milliseconds.  Defendant's 2016 ECG noted a QRS complex duration of 86 milliseconds, and Defendant's 2021 ECG noted a QRS complex duration of 84.  <u>See</u> d/e 39-4, p. 68; d/e 39-1, p. 20. The 2021 ECG also did not list a right ventricular delay.  <u>See</u> d/e 39-1, p. 20.  As of January 2020, Defendant had a BMI of 28.4 as he weighed 215 pounds and 6'1" tall, which renders Defendant

---

[1] QRS Complex is defined as "the series of deflections in an electrocardiogram that represent electrical activity generated by ventricular depolarization prior to contraction of the ventricles." QRS complex, Merriam-Webster Dictionary, https://www.merriam-webster.com/medical/QRS%20complex (last accessed March 31, 2021).

overweight.  See d/e 41, p. 14; Adult BMI Calculator, CDC,

https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/eng

lish_bmi_calculator/bmi_calculator.html (last accessed March 31,

2021).  Having hypertension and being overweight may increase

Defendant's risk, but such risk is unknown.  See People with

Certain Medical Conditions, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html (last accessed

March 31, 2021) ("Having heart conditions such as heart failure,

coronary artery disease, cardiomyopathies, and possibly high blood

pressure (hypertension) can make you more likely to get severely ill

from COVID-19."); ("Overweight (defined as a body mass index (BMI)

> 25 kg/m2 but < 30 kg/m2), obesity (BMI ≥30 kg/m2 but < 40

kg/m2), or severe obesity (BMI of ≥40 kg/m2), can make you more

likely to get severely ill from COVID-19.  The risk of severe COVID-

19 illness increases sharply with elevated BMI.").

　　　　Additionally, the fact that Defendant previously had COVID-19

in October 2020 does not warrant release.  The evidence is not clear

that Defendant is still suffering from COVID-19 side effects besides

his subjective complaints.  Due to Defendant's subjective

complaints of COVID-19 side effects, medical staff at USP Marion

ordered a chest x-ray, which was completed on February 16, 2021,

and noted no acute cardiopulmonary disease, clear lungs, and a

normal heart size.  See d/e 39-1, p. 22.  The Court also notes that

when a doctor visited Defendant in November 2020 for complaints

of severe COVID-19 symptoms, Defendant yelled and cursed at the

doctor because Defendant was in disagreement with the treatment

plan and wanted the doctor to classify Defendant as severe COVID.

See d/e 39-2, p. 2.  The doctor ultimately found that Defendant was

not having the symptoms he described based on Defendant's

presentation and behavior.  Id.  The Court finds that the

combination of Defendant's health conditions does not rise to the

level of extraordinary and compelling reasons that warrant release.

Defendant also raises the argument that his sentence should

be reduced because his sentenced was enhanced based on a prior

state of Illinois conviction for manufacture or delivery of cocaine.  In

United States v. Ruth, 966 F.3d 642 (7th Cir. 2020), the Seventh

Circuit held that Illinois defined "cocaine" more broadly than the

federal law so that a conviction for possession with intent to deliver

cocaine pursuant to 720 ILCS 570/401(c)(2) is not a predicate

"felony drug offense" which triggers 21 U.S.C. § 841(b)(1)(C)'s

sentencing enhancement.  966 F.3d at 650.  However, that

argument cannot be considered by the Court because that

argument was not included in Defendant's request to the warden of

his facility.  See United States v. Williams, 987 F.3d 700, 703 (7th

Cir. 2021) (ruling that "in order properly to exhaust, an inmate is

required to present the same or similar ground for compassionate

release in a request to the Bureau as in a motion to the court.").

    The Court must also reconsider the 3553(a) factors.

Defendant has over three years remaining on his sentence as he

has a projected release date of June 25, 2024.  When Defendant

committed the underlying offense, Defendant was serving a term of

supervised release in a state case.  Additionally, BOP classifies

Defendant as having a high risk of recidivism.  See d/e 39-6.  Based

on a reconsideration of the 3553(a) factors and the nature and

circumstances of the offense, the Court finds that Defendant is not

entitled to compassionate release.

### III. CONCLUSION

    For those reasons, Defendant Lawrence's pro se motion (d/e

32) and amended motion for compassionate release (d/e 34) are

DENIED.

**ENTERED:  April 5, 2021**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**